CITY OF SHEBOYGAN and another, Appellants, vs. INDUSTRIAL COMMISSION OF WISCONSIN and another, Respondents.

*October 13—November 11, 1930.*

For the appellants there was a brief by *Arthur H. Gruhle,* city attorney of Sheboygan, *Lines, Spooner & Quarles* of Milwaukee, attorneys, and *L. S. Clemons* of Milwaukee of counsel, and oral argument by *Mr. Clemons.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

FRITZ, J.   The evidence upon which the commission acted establishes that the city of Sheboygan maintained a poor-farm, which was under the general control of the city poor-master, and which was operated under the immediate supervision of a superintendent, who had been permitted to employ extra farm help when necessary.   Since 1914 Albert Koehler was superintendent and lived on the farm with his family, including his daughter, Lillian Traute, and her son, Gordon Traute.   Ever since Gordon Traute was three years old, his mother, a divorcee, was an employee at the farm, and received a monthly salary and her board and lodging for her services.   Without any express arrangement, during the earlier years, as to Gordon, she kept him with her at the farm.   Ever since he was old enough he attended school, and also, at the direction of Albert Koehler, his grandfather,

and to the knowledge of the city poormaster, he helped on the farm by doing such work as cleaning stables, feeding chickens and hogs, cultivating, hauling milk, silo filling, threshing, and also painting and cleaning rooms. He was injured on October 19, 1928, while operating a feed cutter at the direction and in the place of Albert Koehler, who was ill. He was then seventeen years of age and a high school student.

On several occasions before the injury the city poormaster had informed Gordon's mother and Albert Koehler that the city ought to receive payment for Gordon's board, and it was then agreed between Koehler and the poormaster that, for his board, Gordon should help with the farm work. Gordon continued to do so, and thereafter, shortly before Gordon was injured, the poormaster also authorized Gordon to render tonsorial services for inmates, for which the city poormaster authorized payment to Gordon of $3.75 and $4.80 by the city, after his injury.

In view of the facts thus established, Gordon's activity on the farm at the time of his injury was not merely as a member of his grandfather's family or as an object of charity. He was helping at the feed cutter, at the direction of the farm superintendent, and, by reason of the arrangement made with the city poormaster, he was obliged to perform services of that kind for his board and lodging. To the extent of the farm work which he was to perform in consideration of his keep at the farm, he was in the employment of the city, and his work at the feed cutter when he was injured was service growing out of and incidental to that employment. Consequently, under sec. 102.03 (1), (2), Stats., liability for compensation existed on the part of the city for his injury. However, if he had been employed only as a barber, then no such consequences would have necessarily followed, because the injury was neither sustained while performing services growing out of and in-

cidental to that employment, nor while he was going on his employer's premises, to or from his employment as a barber.

On the other hand, even if the evidence had not established the existence of the relation of employer and employee under an express arrangement as stated above, nevertheless Gordon Traute would have been entitled to compensation as an employee by reason of provisions in sec. 102.07 (4), Stats., which extend the benefits of the compensation act so as to include "all helpers and assistants of employees, whether paid by the employers or employee, if employed with the knowledge, actual or constructive, of the employer." The actual knowledge of the poormaster that Gordon Traute frequently helped other employees perform necessary work on the farm was chargeable to the city. Consequently, the latter had constructive knowledge as the employer. Under the circumstances, liability would exist under the compensation act, although at the time of injury Gordon Traute may have been merely helping at the feed cutter as a substitute for Albert Koehler because of the latter's illness. *Clark v. Industrial Comm.* 197 Wis. 597, 222 N. W. 823.

*By the Court.*—Judgment affirmed.