Le-Co Gin Company et al. *v.* Stratton

No. 41914 June 12, 1961 131 So. 2d 450

624

*Bell & Gore,* Grenada, for appellants.

*Lott & Sanders,* Greenwood, for appellee.

Gillespie, J.

The attorney-referee, Commission and circuit court awarded compensation to the appellee and his alleged employer and its insurance carrier appeal. The facts are without dispute. Appellee, herein called claimant, was a Director and President of LE-CO Gin Company, a cooperative gin corporation. The gin company employed more than eight employees and carried workmen's compensation insurance which carried an endorsement including executive officers, the endorsement being in the following language: "It is agreed that such insurance as is afforded by the policy under Coverage A for the obligations of the Insured under the Workmen's Compensation Law of Mississippi applies to injury, including death resulting therefrom, sustained by the persons named below or listed in Item 4 of the declarations, each of whom, as an executive officer of the insured corporation or as a member of the insured partnership, firm or association, has elected to take coverage under the provisions of such law. ALL ACTIVE EXECUTIVE OFFICERS OF THE INSURED CORPORATION." The Coverage A referred to in said endorsement is the insuring agreement with reference to workmen's compensation as follows: "To pay promptly when due all compensation and other benefits required of the Insured by the workmen's compensation law."

Claimant was one of the stockholders of the gin company and at the time of his injury had served as a director and president for several years. The claimant, as president, had general supervision of the operations of the gin and spent about twenty-five to thirty percent of his time during the ginning season attending to breakdowns, going after parts, doing some physical work

around the gin, picking up the mail at the post office and taking it to the bookkeeper. Such traveling as he did from time to time on behalf of the gin he did in his own pickup truck and was not reimbursed for his expenses insofar as the record shows. He received no remuneration as director and none as president. None of the officers or directors received any remuneration for their services to the gin although a number of the officers and directors helped out in various jobs in the busy gining season.

Claimant lived within about a mile of the gin and operated a 700-acre cotton plantation from which he produced about 135 to 140 bales a year which were ginned at the gin in question. He testified that the gin produced a better grade of cotton than some other gins and he said that he estimated that the quality of the ginning was worth about $15 a bale to him. Claimant's cotton was ginned at cost and saved him about $5 a bale. The record clearly shows that the service performed for the gin was gratuitous on the part of the claimant and other directors and officers and no remuneration therefor was received or expected; that the only financial benefit claimant received from the gin was the quality of ginning as already stated and about $5 a bale advantage because his cotton was ginned at cost. He testified that after the injury here involved and after he resigned as president he continued to receive the same benefits in this regard that he received prior to the accident.

On the morning of December 8, 1958, claimant left his home about 3:30 A.M. to go to the gin to supervise the change of shift. A new manager for the gin was being tried out and he was having difficulty in changing the shift and because of his lack of knowledge and experience he lost about an hour and a half ginning time, where as claimant could change the shift with only about fifteen minutes loss of ginning time. There were numerous trailers with unginned cotton on the yard and it

was desirable to keep the gin running for twenty-four hours a day and this was the purpose for which claimant left his home in the early morning hours and started for the gin. He was also carrying several letters addressed to the gin that he had previously gotten from the post office. Between his house and the gin an automobile ran into the rear of his pickup truck and seriously injured claimant, requiring thirty-four days of hospitalization, about four months of total disability and after he attained maximum recovery his physician estimated his disability at twenty percent.

Claimant was awarded his medical benefits, temporary total disability and twenty percent permanent partial disability at the minimum rate or $10 per week. The Commission found an average weekly wage of $51.92 and this finding was based on the following: That it was worth $15 to claimant to get his cotton ginned because the LE-CO Gin produced a better grade of cotton than other gins and claimant saved $5 a bale by getting his cotton ginned at cost, and this was worth a total of about $2,700 a year on the 135 to 140 bales of cotton produced on claimant's plantation each year.

The question in this case is whether claimant was in an employment status with the LE-CO Gin Company and thereby entitled to claim compensation benefits. We have shown hereinabove the endorsement attached to the policy. This endorsement was made pursuant to Section 6998-40, Code of 1942, which is as follows: "Acceptance of premium by carrier and estoppel.—Acceptance of a premium on a policy securing to an employee compensation, either alone or in connection with other insurance, shall estop the carrier so accepting from pleading that the employment of such employee is not covered under the act or that the employment is not carried on for pecuniary gain.

"When any member of a partnership, firm, or association, or officer of a corporation, who does or does

not perform manual labor, and where there is coverage of fellow employees, elects to take coverage under the provisions of the act, the intent of the insured as well as acceptance by the carrier shall be shown by endorsement to the policy. Any such affirmative action by the parties shall entitle said members or officers to the benefits enjoyed by an employee under the act.''

The definition of employees is given in Section 6998-02, Code of 1942, as follows: ''(4) 'Employee' means any person, including a minor whether lawfully or unlawfully employed, in the service of an employer under any contract of hire or apprenticeship, written or oral, express or implied.''

The same section gives the definition of wages as follows: ''(11) 'Wages' includes the money rate at which the service rendered is recompensed under the contract of hiring in force at the time of the injury, and also the reasonable value of board, rent, housing, lodging, or similar advantage received from the employer, and gratuities received in the course of employment from others than the employer.''

 █ Under the terms of the policy of workmen's compensation insurance here involved, premiums are to be determined in accordance with the company manual and provides that the insured, LE-CO Gin Company, ''shall maintain records of the information necessary for premium computation on the basis stated in the declaration, and shall send copies of such records to the company at the end of the policy period'' for the purpose of determining premiums. Appellants contend in their brief that since claimant received no remuneration for his services to the LE-CO Gin Company there was no basis for any premium. We are unable to find any answer to this contention. Claimant failed to show that any premiums were paid for the coverage of the executive officers, none of them received any remuneration for their services to the gin. Therefore the statutory estop-

pel provided in the first paragraph of Section 6998-40, Code of 1942, does not apply.

■■■ We do not think that the endorsement covering executive officers is sufficient to bring within the protection of the compensation laws all executive officers at all events. ■■■ The statute providing for coverage of executive officers, when read with the balance of the Act, contemplates a contract of hire, express or implied, in order to bring an executive officer within the coverage of the Act. ■■■ The essence of compensation protection is the restoration of a part of the loss of wages which are assumed to have existed. Larson, Workmen's Compensation Law, Vol. 1, Section 47-10, page 688. ■■■ The same text states that "Merely as a practical matter, it would be impossible to calculate compensation benefits for a purely gratuitous workman, since benefits are ordinarily calculated on the basis of earnings." Our statute contemplates and requires a contract of hire. Professor Larson says in Section 47-41, page 696, that "The word 'hire' connotes payment of some kind. By contrast with the common law of master and servant, which recognized the possibility of having a gratuitous servant, the compensation decisions uniformly exclude from the definition of 'employee' workers who neither receive nor expect to receive any kind of pay for their services."

■■■ Section 6998-16, Code of 1942, should be read in pari materia with Section 6998-40, Code of 1942, on the question of employment status. This statute has to do with the determination of wages for compensation purposes and earnings are the sole basis for determination of compensation. ■■■ These wages must be earned in the employment in which the compensation beneficiary was working at the time of the injury. The last sentence provides that where by reason of shortness of time in which the employee has been in the employment of his employer it is impractical to compute the average

weekly wages by the stated method, regard shall be had to the average weekly amount which the employee earned during the fifty-two weeks prior to his injury in similar work in the community.

■■ We do not think that there is any basis for a finding by the Commission that the employee was entitled to have an average weekly wage based on his savings resulting from having cotton ginned at the LE-CO Gin. The sum so saved by him was not a wage; it was not a similar advantage received from the employer under the statutory definition. Such benefits as claimant received from the gin operation flowed from capital investment.

■■ Insofar as executive officers are concerned, Section 6998-40, Code of 1942, extends the protection of the Compensation Act to such officers without regard to the kind of work performed. Protection is afforded by endorsement on the policy as provided by said code section only if the executive officer is a paid executive officer. One claiming the benefits of such extended coverage must meet the other requirements of the Act. His services must be recompensed under a contract of hire, express or implied; ■■ and advantages received by an executive officer flowing from capital investment does not constitute wages within the meaning of the Act.

An executive officer who receives no remuneration for his services and expects none has no loss to be restored by compensation benefits within the meaning of the Compensation Act; for, as stated by Larson's Workmen's Compensation Law, Section 47-10, ". . . the entire philosophy of the legislation assumes that the worker is in a gainful occupation at the time of the injury."

For the reasons stated, we are of the opinion that under the particular facts involved there was no basis for the award of compensation, and the judgment of the

circuit court is therefore reversed and judgment entered here for appellants.

Reversed and judgment here for appellants.

*Lee, P.J.*, and *Kyle, Ethridge* and *Jones, JJ.*, concur.