Dorothy G. HILL, surviving widow, Judy Hill Mitchell, Janet Hill Jones, Jeannie Hill Harris, Jane Hill Dewerff, and James Willard Hill d/b/f and mother, Dorothy G. Hill, all as next of kin of Willard P. Hill, deceased, Plaintiffs-Appellants,

v.

Dan KING, Williams Aviation Inc., and Robertson County, Tennessee, Defendants-Appellees.

Court of Appeals of Tennessee, Middle Section at Nashville.

Oct. 7, 1983.

Permission to Appeal Denied by Supreme Court Dec. 19, 1983.

Thos. W. Schlater and Brenda R. Measells, Nashville, Larry W. Simmons, Springfield, for plaintiffs-appellants.

D. Tracy Shaw and Phillip North, Nashville, for defendants-appellees.

## ABRIDGED OPINION

TODD, Presiding Judge, Middle Section.
(With the Concurrence of Participating Judges, The Original Opinion Has Been Abridged For Publication)

By permission, plaintiffs have appealed from a partial judgment in respect to part of their suit against one of the defendants, Robertson County, Tennessee. Plaintiffs seek compensation from the County for the death of Willard P. Hill who lost his life in the crash of an aircraft being used by the Sheriff of Robertson County to transport a prisoner. As amended, the complaint seeks compensation under the Governmental Tort Liability Act or, in the alternative, under the Worker's Compensation Act. This interlocutory appeal has been authorized to review the action of the Trial Judge in dismissing plaintiffs' suit against Robertson County in all respects except benefits allowed by the Worker's Compensation Act. The action of the Trial Judge was based upon a finding that the deceased was an employee of Robertson County and that the compensation for his death was governed exclusively by the Worker's Compensation Act.

Appellees insist that this Court has no jurisdiction to review a judgment regarding workers compensation, citing TCA §§ 16-4-108 and 50-6-225 which read in pertinent part as follows:

16-4-108 Jurisdiction-Venue—The jurisdiction of the Court of Appeals shall—extend to all civil cases except—workmen's compensation—.

50-6-225—Submission of claim to court upon failure to agree on compensation.

--------------------

(d) Any party to the proceedings in the circuit—court may—appeal to the Supreme Court.

The County maintained in force with one insurance company a single insurance policy covering both forms of liability (negligence of employees and workers compensation). Thus, a finding of workers compensation coverage relieves the County (ergo its insurer) from liability for negligence but imposes liability upon the County (ergo the insurer) for worker's compensation benefits.

If the Trial Judge had ruled that there was no worker's compensation liability, then plaintiffs' appeal would without doubt, be properly addressed to the Supreme Court; but there has been no such ruling.

If the County or its insurer had appealed from the ruling that there was workers compensation liability, then the appeal of the County or its insurer would be properly addressed to the Supreme Court; but there has been no such appeal.

That part of the action which was dismissed by the Trial Court and which is the basis of the present appeal is not a worker's compensation suit, but is a negligence action as to which this court has appellate jurisdiction.

In the case of *Carpenter v. Hooker Chemical and Plastics Corp.*, 553 S.W.2d 356 (Tenn.App.1977), a common law negligence case, this Court reversed an order overruling a motion for summary judgment on grounds of worker's compensation coverage, sustained the motion and dismissed the common law suit. Although no issue was made as to jurisdiction of the appeal, the Supreme Court denied permission to appeal; hence it was evidently satisfied that this Court had jurisdiction to decide the appeal.

■ The Supreme Court holds exclusive jurisdiction of appeals from decisions granting or denying workers compensation. Any party dissatisfied with a decision which imposes or refuses to impose liability under the Worker's Compensation Act may appeal directly to the Supreme Court; but this Court has intermediate appellate jurisdiction of appeals from orders relating to suits for negligence even though the existence or non existence of worker's compensation coverage may affect the right to recover for negligence.

The issue in the present appeal is the right to recover for negligence. That issue is properly before this Court. The issue of worker's compensation coverage is before this Court only as an incident to determination of negligence liability. No award has been granted or denied under the. Worker's Compensation Act. The action of this Court will relate only to rights outside the Worker's Compensation Act.

Accordingly, appellee's first issue is found to be without merit, and the issue of jurisdiction is determined adversely to the insistence of appellee.

Appellee also presents the following issue:

2. Whether there is any material evidence to support the court's finding that Deputy Willard P. Hill was an employee of the defendant Robertson County, Tennessee and is therefore limited to the remedies provided in the Worker's Compensation Act of Tennessee.

Appellee insists that, since the Trial Judge has decided that appellee has no negligence liability because appellee is liable under the Worker's Compensation Act, this appeal is governed by the rule of TCA § 50–6–225(e) that findings of fact in worker's compensation cases shall be set aside only if there is no material evidence to support same.

This Court does not agree. The rule just stated applies only to decisions in which workers compensation benefits are awarded or denied. To hold otherwise would permit a defendant to offer "some evidence" of workers compensation coverage and thereby evade a much more onerous negligence liability in spite of a preponderance of evidence to the contrary.

The determination of facts in this appeal will be in accordance with TRAP Rule 13(d), that is, the finding of the Trial Judge will be presumed correct unless the evidence preponderates otherwise. Appellee's second issue is found to be without merit.

Appellants' first issue is as follows:

1. Whether the deceased, Willard P. Hill, was a volunteer employee and cover-ed by Coverage B with $100,000.00 limits or whether the deceased, Willard P. Hill, was an employee of the Defendant, Robertson County, limited to worker's compensation benefits under Coverage A.

The deceased sustained a unique relationship with Dan King, Sheriff of Robertson County. He had been commissioned a deputy sheriff, had received a pistol and uniform, and was authorized to serve process and transport prisoners. Each employee of the Sheriff was permitted to eat one meal at the jail during each tour of duty. The food was the same as that fed to prisoners, and the purpose of this practice was to assure the public that the prisoners were properly fed. Deceased occasionally ate at the jail while on duty. He was paid no salary, could work as much or as little as he chose and, even when scheduled to work, he was not obliged to report for duty. He was reimbursed for fuel used and expenses incurred on official business. He did regularly report to work; and, when he did, he was subject to orders exactly as other salaried officers were.

Several years previous to the incident in question, deceased had been a full time salaried deputy sheriff, but he had discontinued that employment, moved out of the county, entered employment as a truck driver, was certified as medically disabled, had taken early retirement and had returned to Robertson County. He had offered to "help out" the Sheriff as a volunteer without pay and the Sheriff had accepted his offer. He was supplied with a commission, badge, uniform and pistol, and he worked when he was needed and felt like it, but never received any salary. There is no evidence of any discussion of any consideration being promised to deceased as an inducement to deceased to work for the Sheriff.

On April 21, 1980, the dispatcher was ill, and deceased worked in his stead. On April 22, 1980, deceased reported to work as dispatcher, but the regular dispatcher had recovered and returned to work, so deceased's services were not needed as dispatcher on that day.

On the same date, the Sheriff planned to fly his airplane to West Virginia to transport a prisoner back to Robertson County. A salaried deputy had already been designated to accompany him. The presence of deceased in the plane was explained by the Sheriff *as follows:*

Q. On the date of this tragedy, was Deputy Hill *accompanying you for the* purpose of retrieving a prisoner?

A. That's right.

Q. He enjoyed working for you, didn't he?

A. Very much. He enjoyed that type of work. He loved it. But at no time did I expect him to come to work when he didn't feel like it. He was not expected to perform any duties when his health would not permit it.

Q. Was there any doubt in your mind at the time of his death that Deputy Hill was performing his duties as deputy sheriff to you?

A. No doubt.

Q. No doubt in your mind?

A. No, sir.

Q. He was not on that plane trip for fun, was he?

A. Well, whether he was having fun or not I don't know.

Q. But you had asked him to assist you so you could return this fugitive from West Virginia; is that correct?

A. Yes, sir.

Q. And on this particular occasion you *allowed him to go with you to pick up* this person?

A. I authorized his travel with me, yes, sir.

Q. Now, you had another deputy aboard that day, did you not?

A. That's correct.

Q. Let me put the question to you this way: If Pappy Hill had gotten ill or decided at the last minute that he really didn't feel like making this trip, would you not have gone ahead with the deputy that you had and brought this prisoner back?

A. Without Pappy?

Q. Yes, sir.

A. Yes, sir.

Q. So then he was not essential as far as being a deputy sheriff or exercising his authority to go on that trip. Of course, I understand if you had had a problem you would have expected him to do what he had been trained to do and what he had *always done for you, and that was to help* out.

A. He was essential to the point that everyone is in that anyone can be replaced in any job they do. He was there to perform a service, and he was performing that service. He was physically in the back seat with the prisoner.

Q. So what I am really asking is that Deputy Hill's presence in that airplane was really two-fold: first of all, it was to fulfill a desire of his to go and fly with you where you were the pilot in a plane and go and bring a prisoner back; and, number two, he was there as an extra deputy in case you needed him?

A. That's correct.

Q. (By Mr. Shaw) Deputy Hill loved law enforcement, didn't he?

A. Yes.

Q. In that regard, why would someone work 30 hours a week, 32 hours a week is what Mr. Brooks said, why would somebody do that without compensation?

A. Well, I think you would have to know Pappy to understand that and know the answer to that question. It takes a special person, and that he was.

Q. Is it a fair statement to say he was not compensated financially perhaps, but that he certainly was compensated with the job and the authority to wear a uniform and perform the duties of a deputy, his love of law enforcement?

MR. SCHLATER: I object to that.

A. It would maybe be redintegration, I believe.

The use of the unfamiliar word, "redintegration" best characterizes the motives of deceased in working without compensation. The word is defined by Webster's Third New International Dictionary, Unabridged, as follows:

*re-din-te-grate*—L. redintegratus, past part of redintegrare—to make complete —1. archaic: to put back together: repair: reunite. 2. archaic: to restore to integrity or soundness: reestablish, reinstate. redintegration—1. archaic: restoration to a former state. 2. a: revival of the whole of a previous mental state when a phase of it recurs. b: arousal of any by a part of the complex of stimuli that orig. aroused that response.

In everyday colloquial parlance, deceased had happy memories of his former full time salaried law enforcement work and he wanted to renew his former experiences and "get that old feeling".

T.C.A. § 50–902(b) provides in pertinent part:

(b) Employees shall include every person including a minor, whether lawfully or unlawfully employed—in the service of an employer—*under any contract for hire* —written or implied. (emphasis supplied)

In *Black v. Dance,* 643 S.W.2d 654 (Tenn. 1982), the Supreme Court affirmed the dismissal of an action for workers compensation benefits for the death of a son-in-law while repairing a flat tire on the father-in-law's truck. The deceased was not an employee but assisted the father-in-law at his request. The Supreme Court said:

In order for one to be an employee of another for purposes of our Worker's Compensation Law, it is, therefore, required that there be an express or implied agreement for the alleged employer to remunerate the alleged employee for his services in behalf of the former. As we have already stated, the evidence in this case supports the finding of the Chancellor that no such agreement existed in this case.

The facts of *Black v. Dance* are in large part distinguishable from the facts of this case. So far as appears from the opinion, in *Black v. Dance,* the tire repair was the only service rendered by the son-in-law to the father-in-law and no semblance of compensation is shown in the opinion. In the present case, the deceased was regularly engaged in the service of the Sheriff at duties identical to those performed by salaried employees. His uniform, commission, place and manner of employment were all consistent with that of regular employees of the sheriff except for the relaxed scheduling of his work time to conform to his physical condition and the needs of the Sheriff. Meals were available and sometimes were consumed by deceased while on duty.

However, *Black v. Dance* unequivocally enunciates the rule that there must be an express or implied contract for compensation for services in order to support a status of employee under the Worker's Compensation Act.

The determinative question in this appeal is whether or not there was an express or implied contract for deceased to render services to the Sheriff and to be compensated therefor. What is or is not sufficient in this regard has been discussed in a number of authorities.

This subject is discussed at length with supporting authorities in *Larson's Workmen's Compensation Law* Vol 1–B Sec. 47, p. 8–145 et seq. in the following selected excerpts:

"... There is, however, one respect in which the compensation concept is narrower than that of the common law: Most acts insist upon the existence of a "contract of hire, express or implied," as an essential feature of the employment relation. At common law, it is perfectly possible to strike up a master-servant relation without a contract, so far as vicarious liability is concerned. An infant, a prisoner, a slave, a helpful house guest— all might impose vicarious liability on one who accepted their services performed subject to the master's control.

The reason for the difference between the two concepts is readily explained by the difference between the nature of the two liabilities involved. The end product of a vicarious liability case is not an adjustment of rights between employer and employee on the strength of their mutual

arrangements, but a unilateral liability of the master to a stranger. The sole concern of the vicarious liability rule, then, is with the master: Did he accept and control the service that led to the stranger's injury? If he did, it is of no particular importance between him and the stranger whether the servant enjoyed any reciprocal or contractual rights vis-a-vis the master. Accordingly, the *Restatement of Agency (Second)* says plainly that the master must consent to the service, but nowhere requires that the servant consent to serve the master or even know who he is.

Compensation law, however, is a mutual arrangement between the employer and employee under which both give up and gain certain things. Since the rights to be adjusted are reciprocal rights between employer and employee, it is not only logical but mandatory to resort to the agreement between them to discover their relationship. To thrust upon a worker an employee status to which he has never consented would not ordinarily harm him in a vicarious liability suit by a stranger against his employer, but it might well deprive him of valuable rights under the compensation act, notably the right to sue his own employer for common-law damages.

There is also a sound reason for the requirement that the employment be "for hire." In a vicarious liability suit, payment is not a requisite of servant status, since the stranger's rights against the master could not possibly be affected by the presence or absence of financial arrangements between the master and servant. But in a compensation case, the entire philosophy of the legislation assumes that the worker is in a gainful occupation at the time of injury. The essence of compensation protection is the restoration of a part of the loss of wages which are assumed to have existed. Merely as a practical matter, it would be impossible to calculate compensation benefits for a purely gratuitous worker, since benefits are ordinarily calculated on the basis of earnings.

These, then, are the underlying reasons why compensation acts usually insist upon a contract of hire. They should be borne in mind during the consideration of the particular applications of the contract requirement which follow, with a view to distinguishing legitimate uses of the requirement from purely technical applications having nothing to do with the reason or spirit of the rule."

"The word 'hire' connotes payment of some kind. By contrast with the common law of master and servant, which recognized the possibility of having a gratuitous servant, the compensation decisions uniformly exclude from the definition of 'employee' workers who neither receive nor expect to receive any kind of pay for their services."

"The performance of voluntary patriotic or charitable duties ordinarily leads to no presumption of expected payment. A professional dancer and radio artist volunteered to act as a hostess at a servicemen's canteen. An irrepressible marine, with whom she had consented to dance, took a firm grip on her arm in the process of unfolding a complex jitterbug routine, and threw her spinning through the air, evidently expecting to catch her. He omitted to do so, however, having himself in the meantime hit a table, and the hostess fell to the floor, sustaining injuries. The court, in an opinion containing a good collection of the authorities in the field, held that she was not an employee under the Compensation Act, and was therefore not barred by the exclusive remedy clause of the Act from bringing a damage suit against the canteen based on its failure to protect her from boisterous and disorderly persons. A similar result has been reached as to a carpenter injured while donating his service to the Red Cross, a person volunteering to act as a guard during a liberty bond drive, a schoolteacher assisting in the issuance of warration books, a member donating his services in the construction of a Grange hall, a person voluntarily participating in a carnival for prospective students of a

university, the volunteer manager of the Little Bigger League team, a parent helping out at a Boy Scout dinner, an unpaid member of the state civil defense program, a volunteer fireman doing unpaid work on a new firehouse, a volunteer hospital worker whose only compensation was a free lunch, a volunteer worker in a home for the mentally handicapped whose pay merely covered living expenses, and a church member who volunteered to help clean up the church and whose only tangible compensation was lunch and two snacks during the day she worked."

"A third type of gratuitous worker is the volunteer who assists another person with a view in part to furthering either his own or his own employer's interest. A well-known case is that of a man who helped his friend complete deliveries so that the friend could get away to go hunting with him. Compensation was also denied to a woman who had ordered coal and was herself helping the trucker get the truck into position when injured. The *Restatement of Agency* gives another good example: Whether a man who helps move a stalled vehicle becomes an employee of the owner of the vehicle may depend on whether his purpose in so helping is in part to remove an obstruction to his own progress down the street. The compensation counterpart to this hypothetical illustration is supplied by a Texas case in which emergency aid to a stalled oil truck was held to be partly in the interest of a distributor expecting deliveries.

There is almost no limit to the variety of kinds of self-interest that may appear in this class of cases. It may take the form of acquiring property, such as scrap lumber from a shed being torn down, or protecting one's own property, as in the case of a boy who rode on the top of a house belonging to his father as it was being moved, in order to protect the chimney. It may be an effort to make an impression in the hope of getting a job. In *Associated Employers Lloyds v. Gibson* [Tex.Civ.App. 245 S.W.2d 738 (1951)], a man seeking a part-time job, without disclosing his intention, voluntarily offered to fix a machine. After doing so he was injured when he returned to the machine-room to tell an employee that the sprocket chain was tight and that he was going home. He was held to be a volunteer, not an employee, since there was no intention that he should be paid. Or it may be self-improvement or self-advancement in some other form. Thus, an army sergeant, who had offered to pilot coaches of a military school to various locations, while "on pass" from his regular army duties piloted an airplane in the military school's tactical maneuvers, dropping flour "bombs," and was fatally injured during this exercise. The court upheld the finding that he was not an employee of the military school, but might well have been serving his personal desire to obtain extra flying time with the expense paid by the military school."

"It was observed at the outset of this section that one of the reasons for requiring clear consent by the employee to a contract of hire is that by coming within the compensation act the employee may lose valuable common-law rights. When the person relying upon the employment relation is not an employee seeking compensation, but an employer seeking a defense to a common-law suit, it should not be thought surprising if a court is somewhat more exacting in the evidence it will accept to establish an employment agreement by implication. If this seems to be lack of perfect symmetry, it should be remembered that there also is not perfect symmetry in what is at stake in the two situations: The first is a matter of providing protective statutory benefits, while the second is a matter of destroying valuable common-law rights that have existed for centuries."

"The element of payment, to satisfy the requirement of a contract of hire, need not be in money, but may be in anything of value. Board, room, and training, such as might be furnished a student nurse or hospital interne, are

treated as the equivalent of wages. Indeed, food and lodging have figured as payment in as diverse employments as college football player and county prisoner, and even 'refreshments', which were the sole payment given a casual porter for the odd jobs he did, were held sufficient to sustain a finding of employment. On the other hand, mere gratuities or gifts, unless understood by the parties to constitute the equivalent of wages, are not considered payment under a contract of hire. The same is true of various discounts that may go with the claimant's position, but that are not primarily intended to be remuneration for specific services. For example, the officers of a ginning company enjoyed the privilege of having their cotton ginned at cost—a saving of about five dollars per bale—but this discount was held not to be the equivalent of wages. And a reduction in tuition was also rejected as a form of remuneration for services, especially since practically all students, whether they had reduced tuition or not, performed various tasks around the school."

As to the last discussed subject, payment by other than money, the following cases are listed in footnotes:

*Hartford Acc. & Indem. Co. v. Department of Indus. Relations,* 139 Cal.App. 632, 34 P.2d 826 (1934) was an action for workers compensation by an employee of Volunteers of America who became such by applying for charitable assistance in the form of used clothing and being required to perform some work before receiving such charity. The California Court held that the articles received were not "hire" and reversed an award of worker's compensation benefits.

In *Larson v. Independent School Dist.,* 53 Idaho 49, 22 P.2d 299 (1933), a school janitor was hired at a fixed pay plus family living quarters. With the knowledge and approval of the School Board, the wife of the janitor assisted him 8 hours each day but received no separate pay. The appellate court reversed a decision denying worker's compensation for the death of the wife, holding that compensation paid to the husband and/or housing furnished were "hire".

In *Walkeau v. Llano Del Rio Co.,* 19 La. App. 103, 139 So. 528 (1932) the injured employee had joined a cooperative agreeing to accept as compensation such food, clothing, shelter and services as the "colony" was able to provide, expecting no returns or profits in dollars or cents. Finding no obligation on the part of the employer to furnish anything to the employee, the appellate court reversed an award of worker's compensation benefits.

In *City of Sheboygan v. Traute,* 202 Wis. 420, 232 N.W. 871 (1930), the injured party was the 17 year old grandson of the superintendent of a poor farm whose mother worked for the farm for a salary. The son (grandson) had for several years worked on the farm without pay except that he had been permitted to stay on the farm on condition that he would work for his board. The appellate court affirmed an award of compensation.

*Carraway Methodist Hospital v. Pitts,* 256 Ala. 665, 57 So.2d 96 (1952), was a statutory wrongful death action where the deceased was a student nurse who rendered services to the hospital for which she received free room, board, laundry and $8.00 per month. The appellate court reversed a jury verdict and judgment for the plaintiff on the ground that the nurse was an employee under the Worker's Compensation Law.

In *Brewers Case,* 335 Mass. 601, 141 N.E.2d 281 (1957), an award of worker's compensation benefits was affirmed in favor of a student nurse who performed various hospital duties on an 8 hour shift. The issue of the sufficiency of "wages" or "hire" was not discussed. The decision was based almost entirely upon the general proposition that a student nurse came within the classification of "laborers, workmen and mechanics" as stated in the Massachusetts statute.

In *Krause v. Trustees of Hamline University,* 243 Minn. 416, 68 N.W.2d 124 (1955) it was held that a student nurse who was furnished room and board was an employee

subject to workers compensation and that compensation should be paid.

In *Heget v. Christ Hosp.*, 26 N.J.Misc. 189, 58 A.2d 615 (1948), workers compensation benefits were allowed to a student nurse who received room, board and incidentals.

In *Henderson v. Jennie Edmundson Hospital*, 178 N.W.2d 429, (Iowa 1970), a student nurse was denied compensation where she was in a "short term course" for training as a nurse's aid, paid a small tuition and received no compensation.

In *Hillcrest Hosp. v. State Indus. Court*, 452 P.2d 781 (Okl.1968), compensation was denied because the student nurse who worked in the hospital did so "to get an education and not to provide services" and she paid for her room and board at below actual cost.

In *Bernstein v. Beth Israel Hosp.*, 236 N.Y. 268, 140 N.E. 694, 30 A.L.R. 598 (1923), compensation was awarded to an intern who received no money but lodging, board and uniforms as "wages".

In *Judd v. Sanatorium Comm.*, 227 Minn. 303, 35 N.W.2d 430 (1948) a home economics intern working at a hospital as "apprentice dietitian" was allowed workers benefits where she received board room and laundry from the hospital.

In *University of Denver v. Nemeth*, 127 Colo. 385, 257 P.2d 423 (1953) a football player was awarded workers benefits where he was furnished room, board and a job as consideration for playing football.

In *Van Horn v. Industrial Acc. Comm.*, 219 Cal.App.2d 457, 28 Cal.Comp. 187, 33 Cal.Rptr. 169 (1963) compensation was awarded to a football player who received $50 per month athletic scholarship and $75 per month rent during the football season.

In *Johnson v. Industrial Comm.*, 88 Ariz. 354, 356 P.2d 1021 (1960) prisoners working for a private corporation who received no pay but did receive from the corporation food, lodging and cigarettes, were allowed workers compensation.

In *Boehm v. D.A. Sokol Hall Holding Corp.*, 274 App.Div. 954, 83 N.Y.S.2d 729 (1948) compensation was allowed to a porter who was paid for his regular hours of employment but who was injured while working after hours for which he received only refreshments as compensation. This authority seems to fall in that class of cases in which compensation is allowed for injuries during uncompensated after-hours work on the ground that a compensated employee should not be deprived of protection as a penalty for willingness to do extra work without extra compensation.

In *Ferro v. Leopold Sinsheimer Estate*, 256 N.Y. 398, 176 N.E. 817 (1931), it was held that a boy of 13 or 14 years doing odd jobs and errands for a building superintendent who paid him small gratuities was not entitled to workers compensation as an employee of the building because of lack of an understanding that the gratuities would be "wages", citing *Anderson v. Horling*, 214 App.Div. 826, 211 N.Y.S. 487 (1925).

*Harris v. Seiavitch*, 336 Pa. 294, 9 A.2d 375 (1939) was a common law negligence action for injury to a 10 year old minor who, at the request of defendant's driver, rode the tail gate of defendant's truck to prevent other children from stealing a ride or a bottle of milk. The driver told the plaintiff he would give him "something" in return. Defendant's plea of workers compensation was rejected and the common law judgment was affirmed on the ground that there was no contract for wages but a mere promise of a gratuity.

In *Le-Co Gin Co. v. Stratton*, 241 Miss. 623, 131 So.2d 450 (1961), an officer of the gin company sought compensation for injury which was denied on the ground that he received no compensation except that his cotton was ginned at cost, a savings of about $5.00 per bale on 135 to 140 bales per year. The Mississippi law has a special definition of wages which was not satisfied by the discount on ginning.

In *Todd School for Boys v. Industrial Comm.*, 412 Ill. 453, 107 N.E.2d 745 (1952), students generally performed table-waiting, dish washing and served as proctors. Claimant was injured while in charge of 8

younger students on a sailing outing. It was held that claimant was not entitled to worker's compensation because there was no contract for hire in that no particular consideration was promised or paid for any of the work performed by claimant.

In *Stiles v. Des Moines Council,* 209 Iowa 1235, 229 N.W. 841, a boy scout who was allowed to attend camp free for supervising younger boys was denied workers compensation because he was not a hired employee.

Nothing is found in the foregoing authorities to justify this Court in finding that deceased effectively agreed to forfeit his common law rights against the Sheriff and his statutory tort liability rights against the County when he wore the County's uniform and pistol while on duty, ate an occasional meal while on duty, and/or accepted reimbursement of gasoline used or expenses incurred on county business. It is possible that a court might stretch the occasional meal to represent "hire" if the question were whether or not worker's compensation were due (although this is extremely doubtful). However, as suggested in the above quotation, to impute or imply a waiver of so serious a right as the common law right to recover full compensation or the statutory right to recover within the limits of the Governmental Tort Liability Act, there must be such real, palpable and substantial consideration (hire) as would be expected to induce a reasonable man to give up such valuable rights. In other words, the law will not presume that Mr. King sold his birthright for a mess of pottage. Gen. 25:33.

Appellees cite authorities which they say support their insistence that manner of employment and control will support worker's compensation (ergo defeat tort liability) without evidence of "hire", or agreement for pay.

In *Cal Compensation Ins. Co. v. Industrial Accident Commission,* 118 Cal.App.2d 653, 258 P.2d 78 (1953), cited by appellees, the injured employee worked for a church for pay in the construction of the church building, but was injured while doing the same work during extra hours without pay as a contribution to the church. Under the principle of not penalizing a regular employee who works extra hours and under the theory that the "hire" was the contribution made, worker's compensation was allowed. The Court said: "The fact that he was not paid for every day of his work is immaterial if there was a mutual understanding that some time would be donated as an incident to his employment". 258 P.2d at 80.

In *Village of Creve Coeur v. Industrial Commission,* 32 Ill.2d 430, 206 N.E. 706 (1965), cited by appellees, the claimant was a volunteer fireman who was paid a standard fee of $3.00 when he appeared at a fire. Volunteers were under no specific duty to attend every fire or any particular fire. The village carried a workers compensation policy which specifically included firemen. All the village firemen were volunteers. Workers Compensation was awarded.

In *Rosenbush v. North Miami Beach,* 281 So.2d 298 (Fla.1973), cited by appellees, an auxiliary policeman was injured while attending a required self-defense class. His uniform was furnished and he was told by the police chief that he would be protected the same as other policemen when on duty: He testified that he would not have accepted the position without the promise of protection. His previous suit for common law liability was dismissed because the City Attorney represented to the court that he was covered by workers compensation. In his subsequent suit for worker's compensation, the award was upheld by the appellate court.

In *Garan v. Surratt,* 525 S.W.2d 137 (Tenn.1975), cited by appellees, the Supreme Court affirmed an award of compensation to a painter on the payroll of a manufacturing plant where the painter heard the plant was "hiring painters", went to work and was paid weekly at $3.00 per hour. He was required to "clock in" and "clock out" and expected to work regular working hours from seven to four. There is nothing in this decision inconsistent with *Black v. Dance,* above.

Appellees cite *P & L Construction Co. v. Langford*, 559 S.W.2d 793 (Tenn.1978). That case did not involve sufficiency of wages to constitute "hire", but the amount of wages for computation of amount of compensation.

Appellees cite TCA § 50–6–102 which is likewise concerned with amount of compensation and not determination of whether there was a contract of *hire*. The subsection begins with the words, "Average Weekly Wages" shall mean—.

In *Marcus v. Frankford Hospital*, 445 Pa. 206, 283 A.2d 69 (1971), there was a common law suit for injury to a student nurse (candy striper). The Pennsylvania Supreme Court approved a jury verdict and judgment for the plaintiff rejecting a defense of worker's compensation coverage. Plaintiff "performed volunteer services", reading mail to patients, filling water pitchers, giving out flowers, changing beds, and conducting patients to the discharge desk. She was entitled to receive free meals, but had eaten only one such meal. The appellate court said,

"... In our view, the privilege of receiving such meals on the premises of the Hospital was no more than a nominal gratuity extended by the Hospital incidental to plaintiff's services. It does not amount to "valuable consideration" within the meaning of the Workmen's Compensation Act. See e.g. *Brock v. Bowser*, 376 Pa. 209, 102 A.2d 121 (1954); *Harris v. Seiavitch*, 336 Pa. 294, 9 A.2d 375 (1939); and *Busch v. Bientzle*, 119 Pa.Super, 559, 181 A. 520 (1935)." 283 A.2d at 72.

Appellees insist that deceased is presumed to be an employee because he was performing a task in the usual course of defendant's business, citing *Butler v. Johnson* 221 Tenn. 366, 426 S.W.2d 515 (1968). In that case, there was no question as to "hire". The injured person was told that he would be paid for his labor. The question was whether he was an independent contractor.

Appellees also cite *Sledge v. Hunt*, 157 Tenn. 606, 12 S.W.2d 529 (1928) and *Seals v.*

*Zollo*, 205 Tenn. 463, 327 S.W.2d 41 (1959) in which the same distinguishing factors appear.

Appellee next relies upon the rule of liberal construction as to employee, citing *McAdams v. Canale*, 200 Tenn. 655, 294 S.W.2d 696 (1956). In that case, there was no question as to whether the injured person had been "hired". The only question was whether the work being performed at the time of injury was within the scope of the admitted "hiring".

From all of the above, this Court is satisfied that the evidence preponderates against the conclusion of the Trial Judge that plaintiffs' tort suit should be dismissed because deceased was covered by worker's compensation. This decision is *not* based upon any weighing of credibility of witnesses, for the material facts are undisputed. This Court merely disagrees with the inferences drawn from the undisputed facts and from the conclusion of law reached upon the inferences so drawn.

The decision just stated renders moot the insistence of appellee that it should not be estopped from asserting the defense of worker's compensation because the notice of acceptance Form 3–A, was not on file with the State Department of Labor. Under the circumstances of records in the Department of Labor showing presentation and payment of several claims by employees of the Sheriff, this Court would agree with the appellee's contention if it were material.

The judgment of the Trial Judge is reversed and the cause is remanded for further proceedings consistent with this opinion. All costs of this appeal are taxed against appellees.

Reversed and Remanded.

CANTRELL and CONNER, JJ., concur.