## SHARP COUNTY SHERIFF'S DEPARTMENT *v.* OZARK ACRES IMPROVEMENT DISTRICT

CA 01–210                                        57 S.W.3d 764

Court of Appeals of Arkansas
Divisions IV and I
Opinion delivered October 24, 2001

*Roberts, Roberts & Russell, P.A.*, by: *Bud Roberts, Bruce Anible*, and *Ben McCormack*, for appellant.

*Womack, Landis, Phelps, McNeill & McDaniel*, by: *Richard Lusby*, for appellee.

JOHN F. STROUD, JR., Chief Judge. Appellant, Sharp County Sheriff's Department ("Sharp County"), appeals the Workers' Compensation Commission's adoption and affirmance of the administrative law judge's determination that appellant was liable for workers' compensation benefits as a special employer for a compensable injury suffered by John Slater on January 6, 1998.

John Slater, who had a substantial work history in law enforcement, was hired by the Ozark Acres Improvement District ("District") as a security guard for the District. At the time he applied for the position, it was made known to Slater that the District wanted to hire a person who could be commissioned by Sharp County as a

deputy, thus allowing the District to have a guard with law enforcement authority. Within a month after being hired by the District, and after being interviewed by Sharp County Sheriff Sonny Powell and undergoing a background check and physical examination, Slater was commissioned as a Sharp County deputy sheriff.

This commission increased Slater's pay as a District employee to a level commensurate with the level of pay of a Sharp County deputy sheriff; however, the District was the only entity that provided Slater's salary. Although Sharp County gave the District a $1,000-per-year grant because it had a commissioned law enforcement officer in its employ, it was undisputed that none of that money was used to pay Slater's salary. Sheriff Powell explained that they made a payment in the same amount to other entities that employed a security guard who became deputized and was available on back-up call under a similar arrangement. Not only was the District the only entity that compensated Slater, it also provided him a truck and his law enforcement equipment, with the exception of a borrowed deputy's uniform provided by Sharp County after being requested by the District, which Slater was required by the District to wear while working. In addition to the uniform, the only items provided to Slater by Sharp County were a badge and an identification card.

After his commission as a deputy, Slater was subject to being called by Sharp County to assist on calls in the county that were outside of the District. However, he was only called as a last resort, and Sheriff Powell testified that Slater's commission would not have been revoked if he did not respond to a call for assistance. Nevertheless, the District required that Slater respond to any calls for his assistance from Sharp County. The District continued to pay Slater for calls he answered outside the District during his regular duty hours and gave him "comp time" if he was required to respond to a Sharp County call while he was off duty.

On January 6, 1998, Slater was off duty when he received a call from the Sharp County Sheriff's Department asking him to respond to a call out in the county. Slater put on his deputy uniform and responded to the call. When he arrived and confronted the suspicious persons, he suffered unquestionably compensable injuries when he was attacked by one of the persons. The District originally paid Slater's workers' compensation benefits but later ceased payments, contending that Sharp County was liable for his injuries. The administrative law judge found that Sharp County was liable for payment of workers' compensation benefits as a special

employer, and the Commission affirmed and adopted that opinion as its own. Sharp County now appeals, arguing that it should not be considered a special employer liable for Slater's workers' compensation benefits or, in the alternative, that at the time Slater was injured, he was serving the interests of both Sharp County and the District and the workers' compensation benefits should therefore be shared between Sharp County and the District. We agree with Sharp County's contention that it should not be liable for paying Slater's workers' compensation benefits; therefore, we reverse the Commission's decision.

█ The standard of review in workers' compensation cases is well-settled. We view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirm the decision if it is supported by substantial evidence. *Geo Specialty Chem. v. Clingan*, 69 Ark. App. 369, 13 S.W.3d 218 (2000). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Air Compressor Equip. v. Sword*, 69 Ark. App. 162, 11 S.W.3d 1 (2000). The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Geo Specialty, supra.*

Arkansas Code Annotated section 11-9-102(10)(A) (Repl. 1996) defines "employee" as:

> [A]ny person, including a minor, whether lawfully or unlawfully employed in the service of an employer under any contract of hire or apprenticeship, written or oral, expressed or implied; but excluding one whose employment is casual and not in the course of the trade, business, profession, or occupation of his employer, and·excluding one who is required to perform work for a municipality, county, or the state or federal government upon being convicted of a criminal offense while incarcerated.

██ In *Daniels v. Riley's Health & Fitness Ctrs.*, 310 Ark. 756, 759, 840 S.W.2d 177, 178 (1992), our supreme court, quoting from Larson's *Law of Workmen's Compensation*, discussed the requirements that must be met in order for a special employer to become liable for workers' compensation when a general employer lends an employee to it. Those three requirements are:

> (a) The employee has made a contract for hire, express or implied, with the special employer;

(b) The work being done is essentially that of the special employer; and

(c) The special employer has the right to control the details of the work.

Additionally, the supreme court also noted in *Daniels:*

Employment may also be "dual" in the sense that, while the employee is under contract of hire with two different employers, his activities on behalf of each employer are separate and can be identified with one employer or the other. When this separate identification can clearly be made, the particular employer whose work was being done at the time of injury will be held exclusively liable.

310 Ark. at 759, 840 S.W.2d at 178.

Sharp County contends that it cannot be held liable for Slater's workers' compensation benefits as a special employer because it does not meet any of the three requirements. While we find that Sharp County does meet the requirements of subsections (b) and (c), we agree that they do not meet the requirements of subsection (a) and are therefore not liable for workers' compensation benefits as a special employer.

There is not any question that at the time Slater was injured, he was performing services for Sharp County by answering a call out in the county for the sheriff's department. Although Sharp County argues that this also benefitted the District, the call to which Slater was responding was not in the District; therefore, it is difficult to see how Slater's actions were benefitting the District at the time he was injured. Likewise, it was clear from Slater's and Sheriff Powell's testimony that Powell and other sheriff's department officers with a higher rank than Slater had the right to control Slater's actions while he was performing work for the department, although there was testimony that such authority was never asserted. Sharp County argues that because such authority was never asserted, that requirement was not met. The requirement does not mandate that such authority was asserted, merely that the special employer had the *right* to control the details of the work. Sheriff Powell testified that he retained the right to take Slater's commission as a deputy away from him if he believed that Slater was not performing at an acceptable level.

> [T]he "control" which the special employer must assume need not extend to directing the technical details of a skilled employee's activity. This would mean that skilled employees would hardly ever be employees under the act. What is essential . . . is the right to control the time and place of the services, the person for whom rendered, and the degree and amount of services.

3 A. Larson, *Worker's Compensation Law* § 67.05 (2000).

The sheriff department's right to control Slater's work was sufficient to meet the third requirement.

With regard to the first requirement, the District argues that there was "clearly a contract for hire" for Slater's service as a deputy sheriff, contending that there was an express contract, given the interview process between Slater and Sheriff Powell. The District argues that at minimum, there was an implied contract for hire because Slater sought the commission as a deputy because of the authority and the increase in pay such a designation would provide him, and Sharp County approved the commission because it would receive the benefit of Slater's back-up services as a deputy. The District contends that it is immaterial that it paid all of Slater's salary.

■ We hold that there was never a contract for hire, either express or implied, because Sharp County did not pay Slater for his services. In 3 A. Larson, *Worker's Compensation Law* § 67.05 (2000), it is stated:

> The element of who pays the employee shrinks into comparative insignificance in lent-employee problems, because the net result is almost invariably that the special employer ultimately pays for the services received and the employee ultimately gets paid. But whether the special employer pays the general employer who in turn pays the employee, . . ., or whether the special employer pays the employee direct, the difference for present purposes is one of mechanics and not of substance. *Of course, if this is not so — that is, if either the general employer or the special employer pays the employee and is not reimbursed — the fact of payment is strong evidence that the payor is the employer.*

(Emphasis added.)

This is a case of first impression in Arkansas, but in *Hill v. King*, 663 S.W.2d 435 (Tenn. Ct. App. 1983), the Tennessee Court of

Appeals held that a deputy who was killed in a plane crash while transporting a prisoner was not covered by Robertson County's workers' compensation when he was paid no salary, could work as little or as much as he chose, and even when scheduled to work, he was not obliged to report for duty. Tennessee's definition of "employee" is the same as Arkansas' definition, and the court of appeals held in *Hill* that in order to be considered an employee for purposes of workers' compensation law, there must be an express or implied agreement for the alleged employer to remunerate the alleged employee for his services on behalf of the alleged employer. The court of appeals also stated:

> There is also a sound reason for the requirement that the employment be "for hire." . . . [I]n a compensation case, the entire philosophy of the legislation assumes that the worker is in a gainful occupation at the time of the injury. The essence of compensation protection is the restoration of a part of the loss of wages which are assumed to have existed. Merely as a practical matter, it would be impossible to calculate compensation benefits for a purely gratuitous worker, since benefits are ordinarily calculated on the basis of earnings. These, then, are the underlying reasons why compensation acts usually insist upon a contract of hire. . . . The word "hire" connotes payment of some kind. By contrast with the common law of master and servant, which recognized the possibility of having a gratuitous servant, the compensation decisions uniformly exclude from the definition of "employee" workers who neither receive nor expect to receive any kind of pay for their services.

663 S.W.2d at 440.

Because we hold that Sharp County did not enter into a contract for hire, either express or implied, with Slater, it cannot be said that the first requirement of the three-part test set forth in *Daniels, supra,* has been met. Likewise, because there was no contract for hire between Slater and Sharp County, Sharp County cannot be held liable under the second theory expressed in *Daniels, supra.*

Because we have determined that Sharp County should not be liable for Slater's workers' compensation benefits, it is not necessary to address its alternative argument. We reverse and remand with direction for the Commission to enter an order for the District to be liable for Slater's workers' compensation benefits.

Reversed and remanded.

PITTMAN, HART, NEAL, and ROAF, JJ., agree.

GRIFFEN, J., dissents.

WENDELL L. GRIFFEN, Judge, dissenting. The controlling issue in this case is whether the fact that the County did not provide direct compensation to Slater serves to negate the District's claim that the County was Slater's special employer via an express or implied contract for hire. I believe it does not.

The County and the District agreed that Slater sustained a compensable injury for which he received medical treatment and a fifteen percent permanent impairment rating to his knee. The District, through its insurance company, initially accepted Slater's claim and paid for Slater's knee surgery in the amount of $9,238 in medical expense and for $4,518 in indemnity benefits. In a hearing before the administrative law judge, the District asserted that Slater was not performing employment services for the District at the time of his injury. Rather, it contended that Slater was performing employment services for the County. In response, the County argued that no employer-employee relationship existed between the County and Slater. The County controverted Slater's claim in its entirety.

Arkansas Code Annotated section 11-9-102(9)(A) (Supp. 1999) defines an employee as "any person, including a minor, whether lawfully or unlawfully employed in the service of an employer under any contract of hire or apprenticeship, written or oral, expressed or implied[.]" *Black's Law Dictionary* defines an implied contract as "an agreement which legitimately can be inferred from intention of [the] parties as evidenced by circumstances and ordinary course of dealing and common understanding[.]" *Black's Law Dictionary* 225 (abridged 6th ed. 1990).

Arkansas law recognizes two types of dual employment. *See Daniels v. Riley's Health & Fitness Ctrs.*, 310 Ark. 756, 840 S.W.2d 177 (1992). The first, as set forth in 3 Arthur Larson, *The Law of Workmen's Compensation* § 67.00 (2000), provides as follows:

> When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if:
>     (a) the employee has made a contract of hire, express or implied, with the special employer;

  (b) the work being done is essentially that of the special employer; and

  (c) the special employer has the right to control the details of the work.

When all three of the above conditions are satisfied in relation to both employers, both employers are liable for worker's compensation.

*Id. See also Daniels, supra* (quoting 1C Arthur Larson, *The Law of Workmen's Compensation* § 67.00).

A second type of dual employment is said to exist when one can separately identify the job activities performed by a worker on behalf of one employer from job activities performed on behalf of a different employer. *See Daniels, supra.* When the employee's job activities are clearly distinguishable, the employer whose work is being performed at the time of the incident is deemed solely liable for the incident. *See Daniels, supra.*

Larson emphasizes that the critical issue in determining whether a special employment exists is whether the employee *knowingly* made a contract of hire with the special employer. *See 3 Larson, supra.*

Compensation law, however, is a mutual arrangement between the employer and employee under which both give up and gain certain things. Since the rights to be adjusted are reciprocal rights between employer and employee, it is not only logical but mandatory to resort to the agreement between them to discover their relationship. *The element of payment, to satisfy the requirement of a contract of hire, need not be in money, but may be in anything of value.*

*3 Larson*, § 64.01 (emphasis added).

When the facts demonstrate that an employee has not given informed consent, a special employment relationship does not exist. Consent may be implied through the employee's acceptance of the special employer's control or direction; *however, Larson cautions that the fact that the employee is on the payroll of the special employer is perhaps the least significant factor in determining whether a special employment relationship exists. See 3 Larson, supra.* Instead, one should query whether the employee and the special employer entered into a contract of hire, whether the activity being performed was exclusively that of the special employer, and whether the special

employer assumed the right to dictate the details of the employee's work activity. *See 3 Larson, supra.* Whether a special employment relationship may exist when a borrowing employer has not compensated a loaned employee is a matter of first impression in Arkansas. However, other states reviewing this issue have concluded that the fact of who pays the employee is not wholly dispositive.

In *Sonners v. Department of Labor & Indus.*, 3 P.3d 756 (2000), the Washington Court of Appeals reviewed the issue of dual employment in the context of which employer was responsible for paying industrial insurance premiums. The court held that a leasing company who issued paychecks, had employees fill out applications, performed drug tests, and conducted safety training was not a dual employer under the consent or control prongs of its test to determine whether a dual-employment relationship exists. Although the leasing company provided an entire workforce to a corporation, the court of appeals concluded that the leasing company did not retain the right of control over the worker's daily activities and that the workforce had not consented to an employee-employer relationship such as to satisfy the requirement of dual employment. *See Sonners, supra.*

The issue was also addressed in *Croston v. Montefiore Hosp.*, 229 A.D.2d 330 (1996), when the New York supreme court held that the fact that a technologist-trainee was not financially compensated by Montefiore hospital did not preclude a finding that the trainee was an employee of the hospital. In reaching its decision, the court noted that the hospital selected trainees, supervised and controlled the work of trainees, retained the sole power to discharge trainees, and benefitted from the work performed by trainees. The court observed that the experience and training received by the trainee constituted value to the trainee because it was necessary for her eventual certification. It then held that the trainee's sole remedy against the hospital was workers' compensation benefits. *See Croston, supra.*

In discussing the issue of whether a special employment relationship existed such as to trigger the exclusivity remedy of workers' compensation and bar a common-law claim, the supreme court of Indiana listed several factors to consider. *See Hale v. Kemp*, 579 N.E.2d 63 (1991). These factors include the right to discharge, how an employee is paid, who supplied necessary tools and equipment, whether the parties believed that an employment relationship existed, who controlled the work activities to reach the end result, and whether work boundaries were established. *See Hale, supra.*

However, the *Hale* court noted that the primary factor to determine the existence of an employment relationship was whether the parties *intended* to create a relationship. *See Hale, supra.*

The record in the instant case clearly demonstrates that Slater's application process with the County occurred *after* Slater had been hired by the District as a security guard. The parties do not dispute that Sheriff Powell interviewed Slater numerous times, performed a background investigation, and approved Slater's application for the position of deputy sheriff after Slater underwent a physical at the behest of the County. Also, Slater testified that his employment with the District was not contingent upon him becoming a commissioned deputy sheriff with the County. It is significant that Powell testified that he viewed the application process seriously, that he had the power to approve or deny an application for deputy sheriff, and that he could revoke a deputy sheriff's commission if he determined the deputy was acting in an unprofessional manner.

Slater was aware of the arrangement between the County and the District. The fact that Slater did not receive a monetary benefit from the County is simply not dispositive. The County received the benefit of extra law enforcement in areas outside of the District while the District received the benefit of law enforcement within the District. Slater also benefitted through an increase in the pay he received from the District. Clearly, these facts demonstrate that Slater and the County entered into an express or implied contract for hire. Next, there is no disagreement that Slater received his injury while responding to a law-enforcement call from the County's dispatcher at a time when he was not performing employment services for the District. Because Slater responded during his non-working hours to a call from the County that directed him to investigate a matter located in the County and outside of the District, it is plain that the District received no direct benefit from Slater's law-enforcement activity when his injury occurred.

The County had the right to control Slater's activity while he served in the capacity of a commissioned deputy sheriff outside the District as evidenced by the testimony of Slater and Sheriff Powell. Slater testified that the ranking officer within the sheriff's department had the power to control the activities associated with every response call that took place in the County. Powell corroborated Slater's testimony, and also testified that he retained the ability to revoke the commission of a deputy sheriff if necessary.

Our standard of review is not whether we would have reached a different conclusion from the Commission based on the facts before the Commission, but whether substantial evidence exists to support the Commission's decision. The Commission's decision is supported by substantial evidence and I would affirm. I see no reason to treat Slater different from a leased employee who suffers an injury while working for the employer who procured his labor from a leasing company. The majority, unfortunately, has elevated the factor deemed least important — whether Slater was on the County payroll — as controlling. The better approach is to decide the case based on whose interest Slater was directly serving when injured. Like the Commission, I believe that the record plainly shows that the County was being served. Thus, it should pay the workers' compensation benefits associated with that service.