SHARP COUNTY SHERIFF'S OFFICE *v.* OZARK ACRES IMPROVEMENT DISTRICT and John Slater

01-1237                                                    75 S.W.3d 690

Supreme Court of Arkansas
Opinion delivered May 23, 2002

22

` *Roberts, Roberts, & Russell, P.A.*, by: *Bud Roberts, Bruce D. Anible*, and *Ben Cormack*, for appellant.

*Womack, Landis, Phelps, McNeill & McDaniel*, by: *Richard Lusby*, for appellee Ozark Acres Improvement District.

W H. "DUB" ARNOLD, Chief Justice. Ozark Acres Improvement District petitions for review from a 5-1 court of appeals decision reversing the Arkansas Workers' Compensation Commission. *See Sharp Cty. Sheriff's v. Ozark A. Imp.*, 75 Ark. App. 250, 57 S.W.3d 764 (2001). At issue is whether, under the dual-employment doctrine, a special employment relationship existed where Sharp County did not compensate the district's employee for doing work for the sheriff's office. We granted the petition for review pursuant to Ark. Sup. Ct. R. 1-2(e) and now decide the case.

■■ Upon a petition for review, we consider a case as though it had been originally filed in this Court. *Edens v. Superior Marble & Glass*, 346 Ark. 487, 58 S.W.3d 369 (2001); *Estridge v. Waste Management*, 343 Ark. 276, 33 S.W.3d 167 (2000); *Maxey v. Tyson Foods, Inc.*, 341 Ark. 306, 18 S.W.3d 328 (2000); *Woodall v. Hunnicutt Construction*, 340 Ark. 377, 12 S.W.3d 630 (2000); *White v. Georgia-Pacific Corporation*, 339 Ark. 474, 6 S.W.3d 98 (1999); *Burlington Indus. v. Pickett*, 336 Ark. 515, 988 S.W.2d 3 (1999). We view the evidence in a light most favorable to the Commission's decision, and we uphold that decision if it is supported by substantial evidence. *Id.*; *Deffenbaugh Indus. v. Angus*, 313 Ark. 100, 852 S.W.2d 804 (1993). We will not reverse the Commission's decision unless we are convinced that fair-minded

persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Pickett*, 336 Ark. 515, 988 S.W.2d 3; *ERC Contr. Yard & Sales v. Robertson*, 335 Ark. 63, 977 S.W.2d 212 (1998).

## I.   *Summary of Facts and Procedural History*

Appellant, Sharp County Sheriff's Department ("Sharp County"), appeals the Workers' Compensation Commission's adoption and affirmance of the administrative law judge's determination that appellant was liable for workers' compensation benefits as a special employer for a compensable injury suffered by John Slater on January 6, 1998.

John Slater, who had a substantial work history in law enforcement, was hired by the Ozark Acres Improvement District ("District") as a security guard for the District. At the time he applied for the position, it was made known to Slater that the District wanted to hire a person who could be commissioned by Sharp County as a deputy, thus allowing the District to have a guard with law enforcement authority. Within a month after being hired by the District, and after being interviewed by Sharp County Sheriff Sonny Powell and undergoing a background check and physical examination, Slater was commissioned as a Sharp County deputy sheriff.

This commission increased Slater's pay as a District employee to a level commensurate with the level of pay of a Sharp County deputy sheriff; however, the District was the only entity that provided Slater's salary. Although Sharp County gave the District a $1,000-per-year grant because it had a commissioned law enforcement officer in its employ, it was undisputed that none of that money was used to pay Slater's salary. Sheriff Powell explained that they made a grant in the same amount to other entities that employed a security guard who became deputized and was available on back-up call under a similar arrangement. Not only was the District the only entity that compensated Slater, it also provided him a truck and his law enforcement equipment, with the exception of a borrowed deputy's uniform provided by Sharp County after being requested by the District, which Slater was

required by the District to wear while working. In addition to the uniform, the only items provided to Slater by Sharp County were a badge and an identification card.

After his commission as a deputy, Slater was subject to being called by Sharp County to assist on calls in the county that were outside of the District. However, he was only called as a last resort, and Sheriff Powell testified that Slater's commission would not have been revoked if he did not respond to a call for assistance. Nevertheless, the District required that Slater respond to any calls for his assistance from Sharp County. The District continued to pay Slater for calls he answered outside the District during his regular duty hours and gave him "comp time" if he was required to respond to a Sharp County call while he was off duty.

On January 6, 1998, Slater was off duty when he received a call from the Sharp County Sheriff's Department asking him to respond to a call out in the county. Slater put on his deputy uniform and responded to the call. When he arrived and confronted the suspicious persons, he suffered unquestionably compensable injuries when he was attacked by one of the persons. The District originally paid Slater's workers' compensation benefits but later ceased payments, contending that Sharp County was liable for his injuries. The administrative law judge found that Sharp County was liable for payment of workers' compensation benefits as a special employer, and the Commission affirmed and adopted that opinion as its own. Sharp County now appeals, arguing that it should not be considered a special employer liable for Slater's workers' compensation benefits or, in the alternative, that at the time Slater was injured, he was serving the interests of both Sharp County and the District, and the workers' compensation benefits should therefore be shared between Sharp County and the District. We agree with Sharp County's contention that it should not be liable for paying Slater's workers' compensation benefits and, therefore, reverse and remand the Commission's decision.

## II.   Discussion

Arkansas Code Annotated § 11-9-102(10)(A) (Repl. 1996) defines "employee" as:

[A]ny person, including a minor, whether lawfully or unlawfully employed in the service of an employer under any contract of hire or apprenticeship; written or oral, expressed or implied; but excluding one whose employment is casual and not in the course of the trade, business, profession, or occupation of his employer, and excluding one who is required to perform work for a municipality, county, or the state or federal government upon being convicted of a criminal offense while incarcerated.

■ ■ In *Daniels v. Riley's Health & Fitness Ctrs.*, 310 Ark. 756, 759, 840 S.W.2d 177, 178 (1992), this Court, quoting from Larson's *Law of Workmen's Compensation*, discussed the requirements that must be met in order for a special employer to become liable for workers' compensation when a general employer lends an employee to it. Those three requirements are:

(a) The employee has made a contract for hire, express or implied, with the special employer;

(b) The work being done is essentially that of the special employer; and

(c) The special employer has the right to control the details of the work.

Additionally, we also noted in *Daniels*:

Employment may also be "dual" in the sense that, while the employee is under contract of hire with two different employers, his activities on behalf of each employer are separate and can be identified with one employer or the other. When this separate identification can clearly be made, the particular employer whose work was being done at the time of injury will be held exclusively liable.

310 Ark. at 759, 840 S.W.2d at 178.

Sharp County contends that it cannot be held liable for Slater's workers' compensation benefits as a special employer because it does not meet *any* of the three requirements. We disagree in part. We hold that while Sharp County *does* meet the requirements of subsections (b) and (c), it does not meet the requirements of subsection (a) and is, therefore, not liable for workers' compensation benefits as a special employer.

■ With regard to the third requirement in *Daniels*, there is no question that, at the time Slater was injured, he was performing services for Sharp County by answering a call out in the county for the sheriff's department. Although Sharp County argues that this also benefitted the District, the call to which Slater was responding was not in the District; therefore, it is difficult to see how Slater's actions were benefitting the District at the time he was injured. Likewise, it was clear from Slater's and Sheriff Powell's testimony that Powell and other sheriff's department officers with a higher rank than Slater had the right to control Slater's actions while he was performing work for the department, although there was testimony that such authority was never asserted. Sharp County argues that because such authority was never asserted, that requirement was not met. The requirement does not mandate that such authority was asserted, merely that the special employer had the right to control the details of the work. Sheriff Powell testified that he retained the right to take Slater's commission as a deputy away from him if he believed that Slater was not performing at an acceptable level.

> [T]he "control" which the special employer must assume need not extend to directing the technical details of a skilled employee's activity. This would mean that skilled employees would hardly ever be employees under the act. What is essential . . . is the right to control the time and place of the services, the person for whom rendered, and the degree and amount of services.

3 A. Larson, *Worker's Compensation Law* § 67.05 (2000). The sheriff department's right to control Slater's work was clearly sufficient to meet the third requirement.

With regard to the first requirement, the District argues that there was "clearly a contract for hire" for Slater's service as a deputy sheriff, contending that there was an express contract, given the interview process between Slater and Sheriff Powell. The District argues that at minimum, there was an implied contract for hire because Slater sought the commission as a deputy because of the authority and the increase in pay such a designation would

provide him, and Sharp County approved the commission because it would receive the benefit of Slater's back-up services as a deputy. The District contends that it is immaterial that it paid all of Slater's salary.

■ Sharp County contends, however, that there was never a contract for hire, either express or implied, because Sharp County did not pay Slater for his services. We agree. In 3 A. Larson, *Worker's Compensation Law* § 67.05 (2000), it is stated:

> The element of who pays the employee shrinks into comparative insignificance in lent-employee problems, because the net result is almost invariably that the special employer ultimately pays for the services received and the employee ultimately gets paid. But whether the special employer pays the general employer who in turn pays the employee, . . ., or whether the special employer pays the employee direct, the difference for present purposes is one of mechanics and not of substance. *Of course, if this is not so — that is, if either the general employer or the special employer pays the employee and is not reimbursed — the fact of payment is strong evidence that the payor is the employer.*

(Emphasis added.)

This is a case of first impression in Arkansas, but in *Hill v. King*, 663 S.W.2d 435 (Tenn. Ct. App. 1983), the Tennessee Court of Appeals held that a deputy who was killed in a plane crash while transporting a prisoner was not covered by Robertson County's workers' compensation when he was paid no salary, could work as little or as much as he chose, and even when scheduled to work, he was not obliged to report for duty. Tennessee's definition of "employee" is the same as Arkansas's definition, and the court of appeals held in *Hill* that in order to be considered an employee for purposes of workers' compensation law, there must be an express or implied agreement for the alleged employer to remunerate the alleged employee for his services on behalf of the alleged employer. The court of appeals therein also stated:

> There is also a sound reason for the requirement that the employment be "for hire." . . . [I]n a compensation case, the entire philosophy of the legislation assumes that the worker is in a gain-

ful occupation at the time of the injury. The essence of compensation protection is the restoration of a part of the loss of wages which are assumed to have existed. Merely as a practical matter, it would be impossible to calculate compensation benefits for a purely gratuitous worker, since benefits are ordinarily calculated on the basis of earnings. There, then, are the underlying reasons why compensation acts usually insist upon a contract of hire. . . . The word "hire" connotes payment of some kind. By contrast with the common law of master and servant, which recognized the possibility of having a gratuitous servant, the compensation decisions uniformly exclude from the definition of "employee" workers who neither receive nor expect to receive any kind of pay for their services.

663 S.W.2d at 440.

■ Because Sharp County did not enter into a contract for hire, either express or implied, with Slater, it cannot be said that the first requirement of the three-part test set forth in *Daniels, supra,* has been met. Likewise, because there was no contract for hire between Slater and Sharp County, Sharp County cannot be held liable under the second theory expressed in *Daniels, supra.*

■ In short, because Sharp County should not be liable for Slater's workers' compensation benefits, we hold that the Commission's decision must be reversed and remanded, and an order shall be entered holding the District solely liable for Slater's workers' compensation benefits.

Reversed and remanded; Arkansas Court of Appeals affirmed.

IMBER, J., not participating.