Guy DIXON, *Deceased v.* The SALVATION ARMY

04-545                                    201 S.W.3d 386

Supreme Court of Arkansas
Opinion delivered January 20, 2005

*Tolley & Brooks, P.A.,* by: *Jay N. Tolley,* for appellant.

*Rieves, Rubens & Mayton,* by: *Kent J. Rubens, Michael J. Mayton,* and *David C. Jones,* for appellee.

JIM HANNAH, Chief Justice. This is an appeal from a decision of the Workers' Compensation Commission that Guy Dixon was not an employee of the Salvation Army at the time he suffered injury. Based on this finding, the Commission denied worker's compensation benefits. At the time of the injury, Dixon was enrolled in and performing duties assigned him in a Salvation Army alcohol rehabilitation program. Although Dixon suffered injury while oper-

ating a forklift, he was not operating the forklift in the performance of employment duties for the Salvation Army, but instead was engaged in work therapy as part of his rehabilitation program. We affirm the Workers' Compensation Commission. This case is here on a petition for review from a decision of the Arkansas Court of Appeals reversing the Workers' Compensation Commission. *Dixon v. Salvation Army*, 86 Ark. App. 132, 160 S.W.3d 723 (2004). Our jurisdiction is pursuant to Ark. Sup. Ct. R. 2-4.

## Facts

On June 11, 2001, Dixon filled out an application asking the Salvation Army to admit him into its Rehabilitation Center. Dixon had been admitted to the Salvation Army alcohol rehabilitation program four times previously and was admitted again. Dixon agreed to the conditions of the program: that he attend services on Sunday and on Wednesday, that he live at the Rehabilitation Center for sixteen weeks, that he engage in forty hours of work each week, and that he receive a beginning stipend of seven dollars per week. Dixon also agreed to attend therapy such as Alcoholics Anonymous meetings.

On August 24, 2001, Dixon suffered injury while operating a forklift as part of his work therapy in the rehabilitation program. He was released from the program at that time because the Salvation Army had neither the facilities nor the resources to care for Dixon once he was injured. He was initially confined to a wheelchair. Later, he was able to use crutches and ultimately recovered.

On October 9, 2001, after Dixon was released from the Rehabilitation Center program, and after he recovered from his injuries, he was offered and accepted a full-time job with the Salvation Army. His duties included work that was similar to the work therapy he was provided while he was in the alcohol rehabilitation program. The Salvation Army has a practice of hiring past enrollees in its rehabilitation programs to fill full-time positions necessary to run the programs.

## Standard of Review

Upon a petition for review, we consider a case as though it has been originally filed in this Court. *Sharp County Sheriff's Office v. Ozark Acres*, 349 Ark. 20, 22, 75 S.W.3d 690 (2002). We view the evidence in a light most favorable to the

Commission's decision, and we uphold that decision if it is supported by substantial evidence. *Deffenbaugh Indus. v. Angus*, 313 Ark. 100, 852 S.W.2d 804 (1993). We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *ERC Contractor Yard & Sales v. Robertson*, 335 Ark. 63, 977 S.W.2d 212 (1998).

### Employee Status

In this case, we must determine whether Dixon was employed by the Salvation Army at the time he suffered injury on August 24, 2001. The purpose of the Workers' Compensation Act is to pay benefits to workers who suffer injury or disease arising out of and in the course of employment. Ark. Code Ann. § 11-9-101 (Repl. 2002).

■ Employment is defined in the statutes as "[e]very employment in the State in which three (3) or more employees are regularly employed by the same employer in the course of business. . . ." Ark. Code Ann. § 11-9-102(11) (Supp. 2003). The typical worker's compensation case on employee status presents the question of whether a person is an employee or an independent contractor. *See, e.g., Madden v. Aldrich*, 346 Ark. 405, 58 S.W.3d 342 (2001). In other words, the cases assume that the person is performing labor or services for the benefit of another, and the only issue is whether that person is performing services as an employee or an independent contractor. The facts in our case are different because it is not clear that Dixon was performing labor or services for the Salvation Army. Clearly, Dixon was performing labor or services, but he was performing them as part of the alcohol rehabilitation program in which he had enrolled himself with the laudable goal of freeing himself from his addiction to alcohol.

■ The question that must be answered is whether Dixon was performing labor and services for the benefit of the Salvation Army or for his own benefit. Typically, an employee is one who renders labor or services to another for salary or wages. *Liberty Mut. Fire Ins. Co. v. Canal Ins. Co.*, 177 F.3d 326 (5th Cir. 1999). *See also Colonial Ins. Co. of Cal. v. Am. Hardware Mut. Ins. Co.*, 969 P.2d 796 (Colo. 1998). According to Donald Montgomery, Salvation Army's Drug and Alcohol Rehabilitation Program Director in Fayetteville, Dixon voluntarily entered a sixteen-week work-therapy

program to assist him in gaining control over his alcohol addiction. Dixon was housed and fed at the facility at no cost as part of the program. Montgomery further testified that Dixon agreed to perform whatever work was assigned as a part of the program and that he agreed to attend therapy sessions and various meetings designed to assist him in his recovery.

Appellant cites *Olsten Kimberly Quality Care v. Pettey*, 55 Ark. App. 343, 934 S.W.2d 956 (1996), for the proposition that all this court need do in determining whether workers' compensation benefits are due is decide whether Dixon provided a direct or indirect benefit to the work of the Salvation Army. The issue is a good deal more complicated than that.

The Salvation Army is a charity. *Ramsey v. American Auto. Ins. Co.*, 234 Ark. 1031, 356 S.W.2d 236 (1962). It is a religious movement. *People v. Sparks*, 335 Ill. App. 3d 249, 780 N.E.2d 781 (2002). It collects and sells donated items to raise money to pay for its operations. *See, e.g., Vaughn v. State*, 289 Ark. 31, 709 S.W.2d 73 (1986). However, the Salvation Army is not in the business of selling used items. Rather it sells used items to pay in part for its religious and philanthropic programs designed to assist those in need in our society. It derives a substantial portion of its income from its investments. *Coulombe v. The Salvation Army*, 790 A.2d 593 (Me. 2002). Its adult rehabilitation centers are only funded in part by the sale of donated items. *City of Lewiston v. The Salvation Army*, 710 A.2d 914 (Me. 1998).

The Salvation Army operates adult rehabilitation centers in multiple states. *Id.* In California, the courts have made successful completion of Salvation Army drug rehabilitation programs a condition of probation. *See, e.g., People v. Correll*, 229 Cal. App. 3d 656, 280 Cal. Rptr. 266 (1991). In *Roberts v. State*, 324 Ark. 68, 919 S.W.2d 192 (1996), this court observed that the circuit court sentenced appellant to perform thirty hours of public service for the substance abuse program at the Salvation Army in Fayetteville. The nature of the Salvation Army rehabilitation program was described in *United States v. Rutherford*, 323 F. Supp. 2d 911 (E.D. Wis. 2004):

> On December 26, 2002, he entered a drug treatment program at the Salvation Army Rehabilitation Center in Dallas, Texas. He completed the program on May 1, 2003. Defendant complied with all requirements of the program, including passing random drug tests and attending numerous classes, such as Narcotics Anonymous,

> Alcoholics Anonymous, Relapse Prevention, Family Matters, Character Building and a host of others. Defendant attended Chapel every Wednesday and Sunday, and paid for his participation in the program by working as a floor person in a Salvation Army store.

*Rutherford,* 232 F. Supp. 2d at 912. According to Montgomery, Dixon performed well and made progress.

Dixon was promised and received a gratuity that began at $7.00 per week and increased by one dollar per week to a maximum of $20.00 per week. He did not receive hourly or other compensation based on labor or services performed. Dixon was paid an hourly wage after his injury when he was hired subsequent to recovery from his injury upon application for employment.

The sum Dixon was given while in the alcohol rehabilitation program was intended to allow him to purchase minor personal items he might need that were not provided by the program. Later after the injury, when he went to work for the Salvation Army, Dixon filled out an employment application and was paid a wage of about $7.00 per hour. At that point, he was an employee, but what is at issue is Dixon's status at the time of his injury.

■ Where a person engages in conduct that might be considered work, but does it to further his own benefit rather than to further the benefit of another, the person is not an employee. *Lance v. New Mexico Military Inst.,* 70 N.M. 158, 371 P.2d 995 (1962). In *Joyce v. Pecos Benedictine Monastery,* 119 N.M. 764, 895 P.2d 286 (1995), the court concluded that Joyce was not an employee entitled to workers' compensation benefits where she was injured while carrying out work designed to facilitate her spiritual development as a novice preparing to join the monastery. Joyce received room, board, and $25.00 per week, and she indicated her motivation was the love she had for God. Dixon similarly received room, board, a nominal sum, worked as assigned to assist in his goal to free himself from alcohol, and was at the Salvation Army Rehabilitation Center out of a desire to improve himself.

■ The burden is on the claimant to show a causal connection between his or her injury and employment. *C.J. Horner Co. v. Stringfellow,* 286 Ark. 342, 691 S.W.2d 861 (1985). In order to qualify for workers' compensation, there must be employment. Ark. Code Ann. § 11-9-101.

■ *Schneider v. Salvation Army*, 217 Minn. 448, 14 N.W.2d 4671 (1944), and *Hall v. Salvation Army*, 261 N.Y. 110, 184 N.E. 691 (1933), are cited by both parties in the briefs. Both cases involve injured persons who were employed by the Salvation Army to work and who received both wages and other compensation in room and board. The facts of these cases are not analogous to the facts of this case, where the work Dixon performed was temporary work therapy designed to assist him in overcoming his addiction. In *Schneider,* the Minnesota Supreme Court expressly stated that its decision did not affect earlier decisions finding no employment relationship where indigent men were given temporary work for the purpose of building up their stamina. In *Hall*, the claimant was "on the pay roll," and received $3.00 per week plus room and board.

■ The parties also cite *McBeth v. Salvation Army*, 314 So.2d 468 (La. Ct. App. 1975). In *McBeth*, McBeth came to the Salvation Army as an alcoholic and entered the rehabilitation program just as Dixon did. McBeth was injured in an accident when he was working on a Salvation Army truck picking up discarded items. The discussion of the Louisiana Court of Appeals is helpful:

> The Salvation Army is a Christian Protestant church and a nonprofit Georgia corporation. Every Salvation Army officer is an ordained minister. It has a Men's Social Service Center in New Orleans which operates a rehabilitation program for homeless men with treatable handicaps. Most of those who come to the Center are alcoholics. They are given food, clothing, a place to sleep and a small weekly gratuity for such expenses as cigarettes, soft drinks, razor blades, etc. The gratuity varies and is dependent on the needs of each recipient; it is not based upon the type or amount of work he performs. There is no minimum allowance for beneficiaries but about $4.50 to $5 a week is considered sufficient for those newly admitted. In the case of alcoholics, for rehabilitation purposes The Salvation Army has found it inadvisable to give too much money. As a part of the rehabilitation program, all beneficiaries are required to do some sort of work to get their minds off their problems and as a matter of personal pride in themselves. The maximum given a beneficiary is $15 per week and for those who progress satisfactorily, it is possible to work up to employee status where they can earn a regular hourly wage, can accept outside employment and can live in the community rather than in the Center.

The Center in New Orleans is self-supporting. It obtains discarded items which are donated. These items are processed, refurbished and sold to the public. The program generates gross sales of approximately $450,000 per year, income derived from the donation of the discarded items and from the work of the beneficiaries and employees. The income so obtained pays for the operation of the Center, including the maintenance of the beneficiaries and employees, such as room, board and gratuities to the beneficiaries and salaries to the employees.

*McBeth*, 314 So.2d at 469-70. McBeth was denied workers' compensation benefits. The court in *McBeth* held that the program was provided for McBeth's benefit, and that he was not employed or rendering service to the Salvation Army. Likewise, Dixon was not in the employment of the Salvation Army at the time he was injured, and he is not entitled to workers' compensation benefits.